**In re Frank N. PIASECKI and Donald N. Meyers.**

**Appeal No. 84–775.**

United States Court of Appeals, Federal Circuit.

Oct. 17, 1984.

Willard M. Hanger, Washington, D.C., argued for appellants. With him on brief was Kenneth J. Meyers, Washington, D.C.

Robert D. Edmonds, Arlington, Va., argued for appellee. With him on brief were Joseph F. Nakamura, Sol. and Jere W. Sears, Deputy Sol., Washington, D.C.

Before FRIEDMAN, Circuit Judge, COWEN, Senior Circuit Judge, and NEW-MAN, Circuit Judge.

PAULINE NEWMAN, Circuit Judge.

This appeal is from a decision of the United States Patent and Trademark Office Board of Appeals sustaining the examiner's rejection under 35 U.S.C. § 103 of claims 29–52 of patent application serial No. 84,-234.

Appellants Piasecki and Meyers have applied for letters patent on a new type of air vehicle which may be broadly described as a lighter-than-air craft or airship having the aerodynamic propulsion and control features of the helicopter. The invention relates to air transport of very heavy loads, weighing up to a hundred tons or more. It is especially suited to the transport of large integrated loads such as power plant assemblies and other bulky and heavy prefabricated structures which require precision transport from site to site and which are not amenable to traditional modes of transport. The issue is whether this air vehicle would have been obvious under 35 U.S.C. § 103. The Board of Appeals, in a two-to-one decision, so held.

### The Invention and the Prior Art

Helicopters are used for vertical-lift, short-haul transport, but normal helicopter lifting capacity is limited to approximately ten tons. Appellants point out that the potential of helicopters to lift heavy loads is inherently limited; the payload/gross weight ratio of helicopters is such that neither larger helicopters nor multiple helicopter systems can achieve a sufficient increase in capacity to handle loads of the magnitude here contemplated.

Lighter-than-air craft are a known, alternative form of transport capable of air-lifting large payloads with significantly greater efficiency than aerodynamically supported vehicles such as helicopters. However, a large elongated aerostat is a slow-responding vehicle which is unstable in yaw and pitch. Its capability of precisely controlled hover flight, critical in lifting and depositing payloads to and from precise locations, is extremely poor and highly vulnerable to even mild weather conditions. Due to these limitations, airships are not suitable for the precision transportation of ultra-heavy, large structures.

Appellants' vehicle combines the virtues of both helicopter and airship transport while eliminating the disadvantages of each. Their vehicle is capable of transporting ultra-heavy loads with precision and under varied weather conditions. According to their invention, the hull of an aerostat is fitted with multiple thrust-producing rotors such as those of helicopters. As explained by appellants, since the magnitude of the standard airship elevator and

rudder forces vary as the square of the airspeed, these controls are not effective at low airspeeds. The helicopter rotors provide not only translational propulsion along the desired flight path, but also provide attitude control for the hull—a result not heretofore achieved at low or zero airspeeds.

Each rotor includes multiple blades whose pitch is controlled collectively and cyclically in the manner of conventional helicopter rotors. (Collective pitch control is the modification of all the blades of a rotor simultaneously to change the total amount of thrust generated by the rotor. Cyclic pitch control is the establishment of each blade of a rotor at a different pitch as the blade passes through a selected sector of each rotor revolution to affect the direction in which the rotor thrust is directed.) The controls of each of the rotors are connected through a central integrated control system to a set of flight controls operable by a pilot. The central control system establishes pitch settings in each of the rotors for propulsion—horizontally, vertically, or transversely—and at the same time maintains the hull at the required attitude of pitch, yaw, and roll.

Claim 29 is illustrative:

29. A vectored thrust airship comprising an aerostat hull containing a lighter-than-air gas, at least two pairs of thrust producing units each having a horizontally disposed main rotor with controllable pitch blades and means controlling the pitch of said main rotor blades collectively and cyclically to include longitudinal and lateral cyclic pitch control, means attaching said thrust units to said aerostat hull such that each of a first of said pairs are attached to said hull on opposite sides of the airship longitudinal axis forwardly of the center of mass of said airship and each of a second of said pairs are attached to said hull on opposite sides of the airship longitudinal axis rearwardly of said center of mass, power means connected to the main rotors of each said thrust unit rotor for rotating the rotor blades, a master flight control including a translational control for control of the translational motion of the airship along and perpendicular to its longitudinal axis and an attitude control for control of the angular attitude of the airship about its center of mass, said translational control including a longitudinal translational control for control of the airship motion longitudinally of its axis and a vertical translational control for control of the airship vertical translational motion perpendicular to its axis, said attitude control including a pitch control for control of the airship attitude in pitch and a yaw control for control of the airship attitude in yaw, means interconnecting said main rotor pitch control means of each of said thrust units and said master flight control for the similar actuation of said main rotor pitch control means of said two pairs of thrust units upon operation of a translational control and for differential actuation of the rotor pitch control means of two thrust units located on one side of said airship center of mass and two thrust units located on the other side of said center of mass upon operations of an attitude control, operation of said longitudinal translational control establishing similar actuation of the main rotor longitudinal cyclic pitch control means of said main rotor, operation of said vertical translational control establishing similar actuation of the main rotor collective pitch control means of said main rotors, and operation of said pitch control establishing a differential actuation of the main rotor blade collective pitch control means of the main rotors of the thrust units forwardly of and rearwardly of the airship center of mass.

Variations having vertically oriented, supplementary tail rotors associated with each of the main horizontally oriented rotors are the subject of claims 36–45. Further variations having shrouded supplementary tail rotors associated with the main rotors are the subject of claims 46–52.

### Proceedings before the Patent Examiner and the Board of Appeals

The claims were rejected under 35 U.S.C. § 103 as obvious in view of various combinations of the following five references:

United States patent No. 1,615,002 to Avery, which describes a conventional airship having propulsive propellers (airplane type) facing or rotatable to face in different directions.

United States patent No. 1,821,158 to Howland, which describes a dirigible having four propulsive propeller systems (airplanes) attached.

United States patent No. 3,008,665 to Piasecki, which describes an assembly of a pair of independently operated helicopters interconnected by a beam to which a gas-filled balloon is tethered.

United States patent No. 3,222,012 to Piasecki, which describes a slip stream deflector tail assembly for a helicopter.

United States patent No. 3,656,723 to Piasecki et al., which describes an assembly of rigidly interconnected helicopters having a master control system through which the pitch settings of each rotor are controlled.

Claims 29–39 were rejected under section 103 as obvious over Piasecki '665 in view of Piasecki '723. The examiner concluded that it would have been obvious to provide the rotors attached to the balloon in Piasecki '665 with a master control system similar to that disclosed in Piasecki '723.

Claims 40–45 were rejected under section 103 as obvious over the Piasecki '665 and '723 patents as applied above and further in view of Avery. The examiner concluded that it would have been obvious to provide each lifting rotor of the combination of Piasecki '665 and '723 with transverse thrust rotors for yaw control as taught by Avery.

Claims 29–33, 36–40, and 46–52 were rejected under section 103 as obvious over Howland in view of the Piasecki '012 and '723 patents. The examiner concluded that it would have been obvious to combine the teachings of these references to produce the claimed invention.

A majority of the Board of Appeals affirmed these rejections. The Board agreed, and appellants concede, that the examiner had established a *prima facie* case of obviousness. Appellants contend that they

have successfully rebutted this *prima facie* case, arguing that their rebuttal evidence shows that their invention would not have been obvious to one of ordinary skill in the art. Most of this evidence went to the so-called "secondary" considerations: the enthusiastic reactions to the Heli-Stat (the name adopted by Piasecki for this aircraft); glowing descriptions by experts in the field; peer recognition; government and private funding of prototypes in the United States and also in Japan; newspaper and magazine interest; and other documentary evidence of an immediate and favorable response.

The Board criticized the proffered rebuttal evidence on the basis that most of it was not directed to the cited prior art, stating that it was immaterial whether Piasecki had made "the greatest advance ... in the last 40 years", if this "flowed logically and in an expected manner from the collective teachings of the prior art". Thus the majority of the Board concluded that the examiner's showing of *prima facie* obviousness had not been rebutted.

### The Prima Facie Case

The majority of the Board declined to give weight to rebuttal evidence which related only to "secondary" considerations. They considered such rebuttal evidence to be *ipso facto* insufficient to rebut a *prima facie* case of obviousness. We do not share this view of the law. In the wake of the instruction in *Graham, infra,* that considerations of a nontechnological nature are pertinent to the legal conclusion of obviousness, it is accepted that evidence of so-called secondary factors can shed light, and add weight, to the evaluation of obviousness under section 103. All the evidence on the question of obviousness must be considered. *In re Sernaker,* 702 F.2d 989, 996, 217 USPQ 1, 7 (Fed.Cir.1983).

In its criticisms of the rebuttal affidavits for failure to discuss the prior art, the Board evinced misunderstanding of the proper roles of the examiner's *prima facie* case and an applicant's rebuttal evidence. These are purely procedural devices. The

concept of *prima facie* obviousness in *ex parte* patent examination is but a procedural mechanism to allocate in an orderly way the burdens of going forward and of persuasion as between the examiner and the applicant. Its origin is uncertain, but its ancestry includes mechanisms which were called "presumptions of unpatentability", such as those reflected in early chemical cases such as *In re Henze*, 181 F.2d 196, 201, 85 USPQ 261, 265 (CCPA 1950), which court explained the procedure as follows:

> The appellant was not refused a patent *in limine* but was only placed under a reasonable requirement to overcome a presumption reasonably raised and which he could reasonably be expected to meet
> ....

Clarification in *In re Mills*, 281 F.2d 218, 126 USPQ 513 (CCPA 1960) and other cases emphasized that the "presumption of unpatentability" merely referred to an "inference of fact". As a basic rule of evidence, once an inference of fact is established the burden of persuasion shifts to the applicant, who in turn must produce evidentiary facts. All relevant facts are then considered in determining obviousness. 281 F.2d at 223–24, 126 USPQ at 517–18.

Gradually the concept of the *prima facie* case replaced the "presumption of unpatentability", adding procedural rigor. The examining procedure was analyzed as a two-step process, as set forth in *In re Surrey*, 319 F.2d 233, 235, 138 USPQ 67, 69 (CCPA 1963):

> If the structural similarity ... establishes a prima facie case of obviousness, then appellants can prevail only if they overcome such prima facie case. Hence, two separate questions are involved: (1) whether a prima facie case of obviousness has been established, and, if so, (2) whether the affidavits presented are sufficient to overcome the prima facie case of obviousness.

The Supreme Court in *Graham v. John Deere Co.*, 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545, 148 USPQ 459 (1966), focused on the procedural and evidentiary processes in reaching a conclusion under section 103. As adapted to *ex parte* procedure, *Graham* is interpreted as continuing to place the "burden of proof on the Patent Office which requires it to produce the factual basis for its rejection of an application under sections 102 and 103". *In re Warner*, 379 F.2d 1011, 1016, 154 USPQ 173, 177 (CCPA 1967). After a *prima facie* case of obviousness has been established, the burden of going forward shifts to the applicant. Rebuttal is merely "a showing of facts supporting the opposite conclusion", *In re Heldt*, 433 F.2d 808, 811, 167 USPQ 676, 678 (CCPA 1970), and may relate to any of the *Graham* factors including the so-called secondary considerations. *Perkin Elmer Corp. v. Computervision Corp.*, 732 F.2d 888, 895–96, 221 USPQ 667, 675 (Fed.Cir.1984); *In re Sernaker*, 702 F.2d at 996–97, 217 USPQ at 7–8.

If rebuttal evidence of adequate weight is produced, the holding of *prima facie* obviousness, being but a legal inference from previously uncontradicted evidence, is dissipated. Regardless of whether the *prima facie* case could have been characterized as strong or weak, the examiner must consider all of the evidence anew. The process is as stated in *In re Rinehart*, 531 F.2d 1048, 1052, 189 USPQ 143, 147 (CCPA 1976):

> When prima facie obviousness is established and evidence is submitted in rebuttal, the decision-maker must start over.... An earlier decision should not, as it was here, be considered as set in concrete, and applicant's rebuttal evidence then be evaluated only on its knockdown ability. Analytical fixation on an earlier decision can tend to provide that decision with an undeservedly broadened umbrella effect. Prima facie obviousness is a legal conclusion, not a fact. Facts established by rebuttal evidence must be evaluated along with the facts on which the earlier conclusion was reached, not against the conclusion itself.... [A] final finding of obviousness may of course be reached, but such finding will rest upon evaluation of all facts in evidence, uninfluenced by any earlier

conclusion reached by an earlier board upon a different record.

In the case at bar appellants submitted extensive evidence of peer recognition, long-felt need, and commercial interest. Yet the Board's treatment of the rebuttal documents impels us to the conclusion that the Board did exactly that which *Rinehart* warns against: they viewed each piece of rebuttal evidence solely "on its knockdown ability". Under the Board's approach the *prima facie* case took on a life of its own, such that each fact presented in rebuttal, when it was evaluated at all, was evaluated against the conclusion itself rather than against the facts on which the conclusion was based. The *prima facie* case remained "set in concrete".

This procedure, and the conclusion of obviousness flowing from this procedure, are thus flawed. The dissenting Board member, on consideration of the evidence offered in rebuttal, concluded that the rejection under section 103 should not stand. Accordingly, we turn to the rebuttal evidence.

### *The Rebuttal*

Twenty-six items of documentary evidence are of record. Included are the affidavits of three experts in lighter-than-air craft, as well as U.S. Navy development contracts, Goodyear Aerospace Corporation technical reports, and news and magazine articles.

■ Affiant Rear Admiral C.J. Seiberlich (retired) was with the Office of the Chief of Naval Operations from 1973 to 1977. He is a former airship test and development pilot, and was one of only three flag officers who were rated in airships. He was the coordinator of programs involving helicopter design and procurement requirements, and also of all lighter-than-air programs of any Government agency. Admiral Seiberlich described the needs of the Navy for airlift of heavy loads and the reasons for the Navy's organization in 1974, along with NASA and other agencies, of a workshop of worldwide experts in airship technology. He stated his opinion that the Heli-Stat

heavy-lift vehicle concept was "the greatest advance made in lighter-than-air and airship technology in the last 40 years". Firsthand practical knowledge of unsolved needs in the art, by an expert, is evidence of the state of the art. *In re McKenna*, 203 F.2d 717, 97 USPQ 348 (CCPA 1953). Admiral Seiberlich attested that his job required him to stay abreast of new concepts for air-lifting heavy cargo or equipment from ships, and that no system was capable of handling the heavy loads of the Heli-Stat vehicle.

The Board of Appeals discounted the Seiberlich affidavit, noting that "nowhere does it indicate that the affiant had addressed the prior art relied upon by the examiner". They observed that advancement in the art is not "conclusive" of nonobviousness but "merely" an indicium of nonobviousness, citing *Comm'r of Patents v. Deutsche Gold-und-Silber-Scheideanstalt Vormals Roessler*, 397 F.2d 656, 157 USPQ 549 (D.C.Cir.1968), and concluded that the fact that Piasecki's invention achieved "expected beneficial results" was actually evidence of obviousness, citing *In re Skoner*, 517 F.2d 947, 186 USPQ 80 (CCPA 1975).

We do not agree with the Board's view of the Seiberlich affidavit or the interpretation of the case law it cites in support of its conclusion. *Deutsche Gold* does not stand for the proposition that advancement in the art is "merely an indicium" of nonobviousness; rather, it states that advancement in the art is the overriding constitutional standard "to be implemented by the Commissioner and the courts". 397 F.2d at 665, 157 USPQ at 557. *Skoner* relates to inherency, and is not fairly extended to mean that peer recognition of the benefits of an invention is evidence of obviousness.

■ The Board of Appeals also discounted the affidavit of Norman J. Mayer, for the same reasons. Mayer served as Program Manager and Consultant on lighter-than-air vehicles in the Aeronautical Systems Division at NASA since 1970. From 1941 to 1950 he worked at Goodyear Air-

craft as an engineer specialist in the airship design and engineering aspects of research and flight testing of airships. He helped organize the 1974 workshop where appellants presented the Heli-Stat proposal. He testified about the significant interest by government and by industry in appellants' airship design. Mayer stated that NASA was funding six additional study contracts involving the Heli-Stat vehicle, and that the industry leader Goodyear Aerospace was also funding and promoting its development. Such evidence is objective indicia of nonobviousness. It cannot be ignored as not pertinent. *In re Fielder*, 471 F.2d 640, 644, 176 USPQ 300, 303–04 (CCPA 1973).

The third affiant, Willard M. Hanger, expressed knowledge of and familiarity with the prior art. Mr. Hanger is an aeronautical engineer, former airship pilot and Airship Engineering Officer, and patent attorney. He served as the Head of both the Airship Design Branch and the Helicopter Design Branch in the Bureau of Aeronautics of the Navy Department, and retired with the rank of Captain. Hanger prepared and prosecuted the application which issued as Piasecki '723. Although he is the attorney for appellants, the Board accepted Hanger as an expert in this art.

Hanger's affidavit expressed his opinion that the Heli-Stat vehicle was one of the most significant innovations in airship design in his career, and that it provided a novel solution to a long-standing problem. Hanger stated that he was familiar with prior proposals for swiveling propellers on airships and considered them without merit. He stated that the Heli-Stat vehicle was not obvious in fact to him until first disclosed to him by Piasecki. The Board concluded that Hanger's opinion on the prior art was not persuasive "because it appears that the teachings in the prior art point in the direction of the claimed subject matter".

The Board's view that the prior art teachings "point in the direction of" the subject matter is a factor to be considered along with all other considerations, but it is not the standard of 35 U.S.C. § 103. To the extent that the direction in which the prior teachings may point is determined by hindsight, this standard has long been discredited. *Kalman v. Kimberly-Clark Corp.*, 713 F.2d 760, 774, 218 USPQ 781, 791 (Fed. Cir.1983).

Whether Hanger's affidavit alone was sufficient to rebut the examiner's *prima facie* case is not at issue, for it was not alone. As competent evidence tending to show the nonobviousness of appellants' invention to one of ordinary skill in the art at the time the invention was made, the Hanger affidavit along with the Seiberlich and Mayer affidavits must be accorded fair weight in the company of all other competent rebuttal evidence. *In re Oelrich*, 579 F.2d 86, 91–92, 198 USPQ 210, 214–15 (CCPA 1978).

Although the Board did not discuss the other rebuttal evidence in detail, it postulated that the favorable recognition accorded the Heli-Stat proposal, including the investments in its further development in the United States and in Japan, was not predicated on its unique, innovative design but instead on the fact that it was based on known technology. We find this reason to be neither persuasive nor controlling. Nor do we find that, because an invention may be practical to carry out, objective evidence of its value must be discounted.

The Goodyear Aerospace Corporation *Feasibility Study of Modern Airships (Phase II)*, NASA CR–151917 (September 1976) states that the control system of appellants' airship is a unique advance over that of prior airships. Other advantages discussed in the report include reduction in vertical lift costs, reduction in fuel requirements, low speed control capability, and minimized airship-ground handling problems. The November 1977 issue of "Rotor and Wing" observed that the Piasecki Heli-Stat design deserved serious attention, and that Goodyear, Aerospatiale, and Bell Aerospace Corp. were now working on similar concepts. These contemporaneous documents are further objective indicia and are entitled to be fairly considered.

The dissenting member of the Board referred to the fact that of the forty-seven papers at the 1974 workshop, each presenting a new or improved concept of lighter-than-air vehicles by leaders in this technology, only the Heli-Stat vehicle achieved immediate peer recognition and follow-up financial support.

We find that the majority of the Board did not evaluate the affidavits and the other rebuttal evidence in accordance with accepted evidentiary procedure as described in *Rinehart*. A review of the rebuttal evidence shows that there was a failure of others to provide a feasible solution to the long-standing problem of lifting very heavy loads, that neither airships nor helicopters could do the job, and that experts did not foresee the Piasecki solution. As stated in *Stratoflex, Inc. v. Aeroquip Corp.*, 713 F.2d 1530, 1538–40, 218 USPQ 871, 879 (Fed.Cir.1983):

[E]vidence of secondary considerations may often be the most probative and cogent evidence in the record. It may often establish that an invention appearing to have been obvious in light of the prior art was not. It is to be considered as part of all the evidence, not just when the decisionmaker remains in doubt after reviewing the art.

We find the rebuttal evidence taken as a whole to be of persuasive weight, and conclude that the claimed subject matter would not have been obvious to one of ordinary skill in the art at the time the invention was made. The decision of the Board affirming the rejection of claims 29–52 under 35 U.S.C. § 103 is reversed.

REVERSED.