**In re John R. BEATTIE.**

**No. 91–1396.**

United States Court of Appeals, Federal Circuit.

Sept. 4, 1992.

**1310**

John R. Beattie, New York City, argued Pro Se.

Jameson Lee, Associate Sol., Office of the Sol., Arlington, Va., argued for appellee. With him on the brief was Fred E. McKelvey, Sol. Of counsel was Richard E. Schafer.

Before NIES, Chief Judge, ARCHER and CLEVENGER, Circuit Judges.

ARCHER, Circuit Judge.

John R. Beattie (Beattie) appeals from the decision of the Patent and Trademark Office Board of Patent Appeals and Interferences (board), No. 91–0646, dated April 30, 1991, affirming the rejection of claims 1 through 7 in application Serial No. 07/300,488 as unpatentable under 35 U.S.C. § 103 (1988). We affirm.

## BACKGROUND

### A. *The Invention*

Beattie's application, entitled "Apparatus and Method for Reading and Playing Music on Keyboard or Stringed Instruments," claims a marker intended to rest on the keys of a piano or other keyboard or fretboard instrument and to facilitate the reading and playing of music. The marker consists of a horizontal and a vertical portion. Displayed on the horizontal portion is the traditional musical notation C D E F G A B corresponding to the seven tones of the diatonic scale played by the white keys that make up an octave on a piano. The vertical portion displays numbers, preferably 0 1 2 3 4 5 6 7 8 9 10 11, and corresponds to the twelve half-tones of the chromatic scale played by the white and black keys that together make up an octave. Claim 1 reads:

A marker adapted for use in a basic instructional method for facilitating the reading and playing of music on a keyboard instrument having a standard keyboard with twelve keys per octave of which seven are white and five are black, said marker comprising a body portion formed from a thin material and adapted to rest vertically behind the black keys and upon the white keys of said keyboard instrument, said body portion having displayed thereon in vertical register

with each of said twelve black and white keys a number representing dodecatonically the chromatic semitone pitch sounded by each said black and white key, and tabs extending horizontally forward from the lower edge of said body portion and registering with each of said seven white keys, each of said horizontal tabs having displayed thereon the letter designation C, D, E, F, G, A, or B representing heptatonically the diatonic scale degree pitch sounded by each said white key, the said vertical twelve dodecatonic number designations juxtaposed with the said horizontal seven heptatonic letter designations giving linear and regular expression to the chromatic semitone twelve-pitch structure of the keyboard and of music and, simultaneously, linear and regular expression to the diatonic scale degree seven-pitch structure of the keyboard and of music, said marker adapted to be used in combination with a method of display for written music which likewise gives linear and regular expression to both chromatic semitone twelve-pitch structure and diatonic scale degree seven-pitch structure simultaneously through superimposition of the dodecatonic numbers upon the traditional heptatonic noteheads.

### B. *The Prior Art*

United States Patent No. 1,725,844 to Barnes discloses a marker corresponding to a keyboard with a horizontal portion displaying traditional alphabetical notation and a vertical portion displaying that alphabetical notation plus attendant sharps and flats: C; C–Sharp or D–Flat; D; D–Sharp or E–Flat; E; F; F–Sharp or G–Flat; G; G–Sharp or A–Flat; A; A–Sharp or B–Flat; B.

United States Patent No. 566,388 to Eschemann teaches a musical marking system with a lower register displaying the traditional seven letters on the white keys and those letters with attendant sharps and flats on the black keys of the octave and an upper register with a numerical rather than alphabetical notation. Specifically, the traditional letters are represented as numbers one through seven with attendant sharps and flats indicated as those numbers outlined to correspond to the twelve tones of the octave: 1 **1** 2 **2** 3 4 **4** 5 **5** 6 **6** 7.

United States Patent No. 608,771 to Guilford discloses a system of musical notation that identifies the series of twelve half-tones of the chromatic scale with numbers 1 2 3 4 5 6 7 8 9 10 11 12. Guilford characterizes alphabetical notation with sharps and flats as "perplexing and irrational."

### C. *The Rejection*

The board affirmed the examiner's rejection of claims 1 through 7 under 35 U.S.C. § 103 as obvious in view of the combined teachings of Barnes, Eschemann and Guilford. Because the claims are not separately argued, they stand or fall together. *In re Kaslow*, 707 F.2d 1366, 1376, 217 USPQ 1089, 1096 (Fed.Cir.1983); *In re Albrecht*, 579 F.2d 92, 93–94, 198 USPQ 208, 209 (CCPA 1978). The board concluded that Eschemann taught a marking system displaying a combination of two different notations, *viz.*, alphabetical and numerical, and then determined that it would have been obvious to substitute the 1 2 3 4 5 6 7 8 9 10 11 12 numerical notation of Guilford for the 1 **1** 2 **2** 3 4 **4** 5 **5** 6 **6** 7 numerical notation of Eschemann.

### DISCUSSION

### I.

▮ ·This court reviews an obviousness determination by the board *de novo*, while we review underlying factual findings for clear error. *In re Woodruff*, 919 F.2d 1575, 1577, 16 USPQ2d 1934, 1935 (Fed.Cir. 1990). What a reference teaches is a question of fact. *Panduit Corp. v. Dennison Mfg. Co.*, 810 F.2d 1561, 1579 n. 42, 1 USPQ2d 1593, 1606 n. 42 (Fed.Cir.1987). When determining the patentability of a claimed invention which combines two known elements, "the question is whether there is something in the prior art as a whole to suggest the desirability, and thus the obviousness, of making the combination." *Lindemann Maschinenfabrik*

**1312**

*GMBH v. American Hoist & Derrick Co.,* 730 F.2d 1452, 1462, 221 USPQ 481, 488 (Fed.Cir.1984).

## II.

In his specification, Beattie refers to the alphabetical designation C D E F G A B as a heptatonic representation of the diatonic scale degrees and the numerical designation 1 2 3 4 5 6 7 8 9 10 11 12 as a dodecatonic representation of the chromatic semitones. These two theories combined on a single marker achieve, in Beattie's words, a "mutual reinforcement of the advantages inherent in each approach, permitting both types of scales, the diatonic and the chromatic, to appear as smooth progressions, easy for students to visualize and understand."

There is no dispute that Barnes and Eschemann each disclose the heptatonic theory and that Guilford teaches the dodecatonic theory such that Guilford's notation substituted on the upper register of the marking systems of either Barnes or Eschemann describes the claimed invention. The question here is whether the board correctly held that it would have been obvious to one having ordinary skill in the art to combine the references in order to meet the claimed invention. Beattie contends that the board, in arriving at its conclusion of obviousness, did not accord due weight to the notion that Guilford teaches away from the claimed combination and that the declarations of seven music teachers provide convincing evidence of nonobviousness of the invention.

Eschemann displays on the lower register of his marking system the traditional letters alone and those letters with attendant sharps and flats for "those familiar with the ordinary musical notation." On the upper register, Eschemann displays 1 1 2 2 3 4 4 5 5 6 6 7 "for those unfamiliar with the theory of music." Eschemann, then, provides the suggestion to retain traditional alphabetical notation when introducing a new numerical notation.

Guilford teaches the advantages of a dodecatonic twelve tone music theory over the traditional heptatonic seven and twelve tone music theories. Specifically, Guilford discloses the deficiencies of traditional music theory of twelve tones based on a notation system having only seven intervals thus requiring five sharps and flats. He arrives at a "simple and rational" solution by utilizing the uniform series of numbers 1 2 3 4 5 6 7 8 9 10 11 12 instead of the "perplexing and irrational" system of C, C#/Db, D, D#/Eb, E, F, F#/Gb, G, G#/Ab, A, A#/Bb, B. This reference suggests the desirability of implementing a simple numerical alternative to the complex alphabetical music notation.

Armed with a reference teaching the old alphabetical notation on a marking system with a new numerical notation in one hand and a reference teaching a different numerical notation in the other hand, the obviousness of substituting Guilford's numerical twelve tone system for Eschemann's numerical twelve tone system to arrive at Beattie's claimed invention is clearly established.

■ Although Guilford's twelve tone theory is said to be "dodecatonic" while Eschemann's twelve tone theory is said to be "heptatonic," as Beattie defines those terms, the absence of a single express teaching of a marker with the two theories combined does not make impossible a sound *prima facie* case of obviousness. As long as some motivation or suggestion to combine the references is provided by the prior art taken as a whole, the law does not require that the references be combined for the reasons contemplated by the inventor. *In re Kronig,* 539 F.2d 1300, 1304, 190 USPQ 425, 427–28 (CCPA 1976); *In re Lintner,* 458 F.2d 1013, 1016, 173 USPQ 560, 562 (CCPA 1972).

Moreover, Guilford's endorsement of a dodecatonic twelve tone notation over the traditional twelve tone notation does not establish a teaching away from the older system such that Guilford cannot be combined with Eschemann. Guilford merely presents an alternative to a well-entrenched musical theory, which, of course, he considers better and urges as a replacement. The recommendation of a new musi-

cal notation system, however, does not require obliteration of another; coexistence of the teachings of Guilford and traditional musical notation for nearly a century bears this out.

### III.

Beattie's final argument on appeal is that the declaration evidence supports his position that the claimed invention is nonobvious. The seven declarations of musicians and music teachers submitted under 37 C.F.R. § 1.132 generally praise Beattie's invention, opine that Guilford teaches away from the claimed invention and conclude that the invention would not have been obvious. It is unquestioned that such evidence must be considered, *In re Piasecki,* 745 F.2d 1468, 1471, 223 USPQ 785, 787 (Fed.Cir.1984), and may be sufficient to overcome a *prima facie* case of obviousness. *Id.* at 1472, 223 USPQ at 788, (quoting *In re Surrey,* 319 F.2d 233, 235, 138 USPQ 67, 69 (CCPA 1963)). In this case, however, the board properly considered all the rebuttal evidence and arguments and determined that they were insufficient to establish nonobviousness in the face of the very strong *prima facie* case of obviousness. *See In re Lindell,* 385 F.2d 453, 456, 155 USPQ 521, 524 (CCPA 1967).

Specifically, the board noted that the Eschemann reference was not a part of the rejection at the time the declarations were prepared, concluded that the declarations failed to show a long felt need and failure of others to meet that need as urged, and stated that the declarations themselves offer only opinion evidence which has little value without factual support. We are not persuaded that the board erred in determining that the declarations were insufficient to establish nonobviousness.

AFFIRMED.

CLEVENGER, Circuit Judge, dissenting respectfully.

The majority quite rightly identifies the dispositive issue in this case: whether there is a legally sufficient reason to combine the Guilford reference with the other cited prior art, thereby rendering Beattie's claims *prima facie* obvious. That issue, of course, cannot be responsibly addressed without examining the teachings of the prior art.

We all agree that without the dodecatonic—*i.e.,* twelve equal tone—system of notation found in the Guilford reference Beattie's claims are not unpatentable under section 103. This is so because Beattie claims the combination of two radically different systems of musical notation on a single marker, not the mere mixing of numbers and letters on a marker to express the same system of notation. The majority correctly points to nothing in the Eschemann or Barnes references that would provide a suggestion to combine them with Guilford. The majority cannot find such a suggestion in the Eschemann or Barnes markers because both registers of these markers are written in heptatonic notation, *i.e.,* with seven primary tones and five secondary tones. There is no indication in either reference that these markers should or could incorporate the dodecatonic notation disclosed in Guilford. Consequently, if Guilford is to be combined with either Eschemann or Barnes, it is because Guilford provides the requisite suggestion.

What Guilford teaches is a question of fact. *Panduit Corp. v. Dennison Mfg. Co.,* 810 F.2d 1561, 1579 n. 42, 1 USPQ2d 1593, 1606 n. 42 (Fed.Cir.), *cert. denied,* 481 U.S. 1052, 107 S.Ct. 2187, 95 L.Ed.2d 843 (1987); *Ashland Oil, Inc. v. Delta Resins & Refractories, Inc.,* 776 F.2d 281, 297 n. 24, 227 USPQ 657, 667 n. 24 (Fed.Cir.1985), *cert. denied,* 475 U.S. 1017, 106 S.Ct. 1201, 89 L.Ed.2d 315 (1986). Whether Guilford teaches toward combination with other prior art, or away from such combination is also a question of fact, *Raytheon Co. v. Roper Corp.,* 724 F.2d 951, 960–61, 220 USPQ 592, 600 (Fed.Cir.1983), *cert. denied,* 469 U.S. 835, 105 S.Ct. 127, 83 L.Ed.2d 69 (1984), not a mere "notion" as the majority holds today for the first time. These factual questions go to the core of the obviousness analysis.

Guilford itself and seven declarations from persons skilled in the art of music teaching are the only factual evidence in this case addressing whether Guilford teaches toward or away from combination with the Eschemann or Barnes references.

Let us first examine Guilford and then turn your attention to the declarations.

The system of notation Guilford discloses is, in a word, distinct. For example, Guilford writes the first and last four measures of "Home Sweet Home" thus:

Guilford describes traditional pitch notation as "a perplexing and irrational system of sharps, flats, and naturals" such that "the same tone has many different symbols." He finds the traditional five line staff bothersome because it notates, at most, only one and one-third octaves of the more than seven octave musical range. The traditional staff

> necessitates the use of a greater or less number of ledger-lines above and below the staff, thus needlessly increasing the work of composition for the type-setter, besides consuming a large part of the page for only a few measures of the music, and, worse than all, it adds greatly to the difficulty of reading the music itself.

Guilford also states that "the present notation is just as defective in its means for expressing time as it is in its means for expressing pitch." He finds the current system of notation "illogical" and that it does not express the modern conception of musical time. Guilford emphasizes that he "employ[s] a single uniform series of note-symbols" and that "the use of all so-called 'accidentals' [sharps, flats and naturals] is rendered wholly unnecessary." Guilford dramatically sums up his invention stating:

> [w]ith a view to overcoming the above deficiencies, crudities, and other faults as well I have devised a new notation which affords a simple and adequate means for expressing pitch, accent, and duration, which are the elements of modern music.

Guilford more than fails to suggest using the traditional system of notation in combination with his own system of notation as Beattie has done. Rather, Guilford actively rejects the traditional alphabetical notational system and proposes his system as a replacement. In so doing, Guilford removes any basis of finding a suggestion to combine his system of notation with any other system, including the traditional alphabetic system of notation used in the lower portions of both the Eschemann and Barnes markers.

The Board did not examine these unmistakable teachings of Guilford. Instead, it merely asserted that an artisan would have seen the need to merge Guilford with the other prior art. The Board thus committed clear error by misreading the factual content of the prior art.

When addressing the declaration evidence, the Board recognized that "each affidavit [contains] ... discussions ... that Guilford teaches away from [combination]," but dismissed the affidavits because they contained conclusions on the ultimate legal issue of obviousness as well. I do not quibble with the Board's or the majority's rejection of the experts' conclusions on the ultimate legal issue. The Board and the majority, however, are not free to ignore declarations in the record from music experts who all agree that the seven-tone

approach to music and the twelve-tone approach to music are two incompatible concepts. In these declarations, the experts state, in part:

> Although it is well known that music can be thought of as based on seven tones and it can also be thought of as based on twelve tones, Mr. Beattie is carrying this an important step further by showing how to combine the two schools of thought.... It appears to me that this is a significant attempt to combine two separate trends in music which had previously been assumed to be irreconcilable.... [T]he bias in *Guilford* is clearly toward doing away with all seven tone orientation, not toward finding ways to keep it around.... This, in my view, shows [Guilford's] desire to eliminate any vestige of seven-orientation from his system which is the exact opposite of the seven-twelve reconciliation which Mr. Beattie discloses. (Joel Mandelbaum, Professor of Music, Queens College.)

> Since inventor Guilford's twelve semi-tone numbers per octave stand all by themselves, and are not correlated in any way with the conventional seven scale degrees, it is clear to me that his objective was to discard the old seven-based system and replace it completely with his new twelve-based system, not combine the two. He offers positively no discussion or hint of making a "heptatonic/dodecatonic" combination. In fact the opposite is true, because he specifically says (page 2, line 93) that his system will make the use of accidentals "wholly unnecessary", which is to say [Guilford] advocates eliminating the seven-based system from consideration. (Lawrence Widdoes, music instructor, The Julliard School at Lincoln Center.)

> [Guilford] appears to have been engaged in a crusade to stamp out the traditional system with its "perplexing and irrational system...." (Paul Sheftel, music teacher, author, lecturer, pianist and composer.)

> [I]t is fairly evident that Guilford intends his numerical arrangement to supersede, not reinforce, the traditional diatonic system with its sharps and flats which he describes as "perplexing and irrational" (p. 1, lines 25 and 26), and in fact this is a goal similar to that of the twelve-number systems used by music theoreticians.... (L. Poundie Burstein, faculty member at The Mannes College of Music and Preparatory School and teacher at Queens College.)

Teachings of the prior art simply cannot be combined when the prior art contains no suggestion or motivation to combine them. *ACS Hosp. Sys., Inc. v. Montefiore Hosp.,* 732 F.2d 1572, 1577, 221 USPQ 929, 933 (Fed.Cir.1984). There can be no motivation or suggestion to combine when the prior art in fact teaches away from any combination.

In the face of uncontroverted materially dispositive factual evidence to the contrary, the majority zestlessly declares, *ipse dixit,* as did the Board, that it is obvious to combine Guilford with Eschemann. It never tells you why its conclusion might otherwise be correct. Furthermore, the majority simply avoids the factual evidence in the record that precludes combination. Rather than come to grips with the factual support the declarations provide for the proposition that Guilford teaches away from combination, the majority simply dismisses the declarations in their entirety as an unsuccessful effort to overcome a *prima facie* case of obviousness. Just because the declarations address matter pertinent to "secondary considerations", *see Graham v. John Deere Co.,* 383 U.S. 1, 17–18, 86 S.Ct. 684, 694, 15 L.Ed.2d 545 (1966), does not justify calculated avoidance of all other pertinent factual assertions contained therein. Even the Board recognized that the declarations speak to the teaching away issue. Guilford tells the examiner, the Board and the majority not to combine his system of notation with the traditional system he despises, and those skilled in the art agree that Guilford teaches away from combination. These are facts that cannot be ignored.

The majority concludes that Beattie faced a "very strong *prima facie* case of obviousness." There can be no such case here unless someone can find in "the prior art taken as a whole" the suggestion to

combine Guilford with the other prior art. The mere conclusory approach of the Board, which the majority leaves undisturbed, is unconvincing. I submit that Beattie provided the motivation to combine the two systems of notation. His genius resides in combining two hitherto alien systems of musical notation on one marker. Perhaps "simple as pie," but not obvious under section 103.

I am at a loss to understand why the majority seems compelled to affirm the clearly erroneous decision of the Board. This court regularly upsets trial court judgments of Article III judges when they fail to consider correctly the pertinent facts. *See, e.g., Read Corp. v. Portec, Inc.,* 970 F.2d 816, 829, 830 (Fed.Cir.1992) (reversing district court denial of JNOV because jury verdict of willful infringement unsupported by substantial evidence); *Laitram Corp. v. Rexnord, Inc.,* 939 F.2d 1533, 1539, 19 USPQ2d 1367, 1372 (Fed.Cir.1991) (reversing district court because conclusory assertions of infringement insufficient); *Eli Lilly & Co. v. Medtronic, Inc.,* 915 F.2d 670, 673–74, 16 USPQ2d 2020, 2023 (Fed.Cir. 1990) (reversing district court because factual findings insufficient to establish violation of injunction). Why we should treat the Board of Patent Appeals and Interferences differently is a mystery to me.

Given the choice of crediting the unsupported conclusion of my colleagues or the unmistakable teaching of Guilford and the unchallenged factual statments of experts skilled in an esoteric art, I must part company with my colleagues.