**In re Burt F. RAYNES.**

No. 92–1292.

United States Court of Appeals,
Federal Circuit.

Oct. 26, 1993.

Michael H. Jester, Baker, Maxham, Jester & Meador, of San Diego, CA, submitted, for appellant. Of counsel was Freling E. Baker.

Fred E. McKelvey, Sol., Office of the Sol., of Arlington, VA, submitted for appellee. With him on the brief was Joseph G. Piccolo, Asst. Sol. Of counsel were Richard E. Schafer, John W. Dewhirst, Lee E. Barrett and Albin F. Drost.

Before NEWMAN, PLAGER, and LOURIE, Circuit Judges.

PAULINE NEWMAN, Circuit Judge.

Burt F. Raynes appeals the decision of the Board of Patent Appeals and Interferences of the United States Patent and Trademark Office, holding all claims of patent application Serial No. 513, 235 unpatentable for failure to meet the requirements of 35 U.S.C. § 103. We affirm the Board's decision.

## Discussion

■ The Raynes invention is a computer-processed interactive automobile service station, wherein the fuel pumps are equipped with means for display of video programming as well as fuel price and quantity and other electronically recorded information. The examiner rejected claims 1, 4, 6, 8, and 10 as obvious in view of United States Patent No. 3,949,207 to Savary *et al.* Claims 2, 3, 5, 7, 9, and 11–15 were rejected as obvious in view of Savary in combination with United States Patent No. 4,658,371 to Walsh *et al.* This court reviews *de novo* the Board's determination of whether a claimed invention would have been obvious in terms of 35 U.S.C. § 103. *In re McCarthy*, 763 F.2d 411, 412, 226 USPQ 99, 100 (Fed.Cir.1985).

Claims 1 and 11 were agreed to be representative.

### Claim 1

1. An interactive automobile servicing system, comprising:

a central processing unit;

a plurality of fuel pumps connected to the central processing unit and including means for displaying video programming and price/quantity information regarding the amount of fuel dispensed; and

means for providing the video programming to the pumps.

The claim is partly in the form authorized by 35 U.S.C. § 112 ¶ 6, and is directed to the function of video display at the fuel pump by the means stated in the specification and equivalents thereof.

As the means for displaying video programming, Raynes' specification states that the cathode ray tube (CRT) of television display may be used. As the means for providing the video programming, Raynes refers to an "audio/video module" which may include a video tape machine, a video disk player, or a CD audio player. Raynes argues that the display of video programming at the fuel pump is not shown or suggested in the cited references.

The Savary patent describes an automotive servicing system having a central processing unit and four fuel delivery pumps, each having a "display window or panel" for displaying the quantity and price of the gasoline. It is not disputed that all of the elements of Raynes' claim 1 are shown in the Savary patent except for the video display means and provision of video programming. Savary states that

the display system can be any conventional system but, in the present embodiment, it comprises using a seven segment display.

Savary further describes the display system as a panel consisting of "luminous elements". Raynes interprets this to mean that Savary's display system is a light emitting diode (LED) or liquid crystal display (LCD). While there is no mention of a LED or LCD in Savary's specification or claims, the Commissioner does not dispute this interpretation.

The Board observed that video display using a CRT is a conventional display system, and cited the Kirk–Othmer Encyclopedia of Chemical Technology, which contains the following statement:

**Displays.** Flat-panel visual displays are an active area of research aimed at a lucrative market. Such displays may eventually displace the bulky and fragile cathode ray tube in television and computer applications, despite continual advances in CRT technology. A flat-panel display consists of an array of closely spaced elements. . . . The individual elements may be light emitting, such as the LED, plasma panel, cathodoluminescent device, and electroluminescent device, or non-emitting, as in liquid crystals[.]

The Board held that it would have been obvious to replace the display system of Savary with a CRT display, with its known video capability.

■■ When determining whether a new combination of known elements would have been obvious in terms of 35 U.S.C. § 103, the analytic focus is upon the state of knowledge at the time the invention was made. The Commissioner bears the burden of showing that such knowledge provided some teaching, suggestion, or motivation to make the particular combination that was made by the applicant. *In re Oetiker*, 977 F.2d 1443, 1445–47, 24 USPQ2d 1443, 1444–46 (Fed.Cir.1992); *In re Piasecki*, 745 F.2d 1468, 1471–72, 223 USPQ 785, 788 (Fed.Cir.1984). This determination is made from the viewpoint of the hypothetical person of ordinary skill in the field of the invention. 35 U.S.C. § 103; *In re Gorman*, 933 F.2d 982, 986, 18 USPQ2d 1885, 1888 (Fed.Cir.1991).

■ The question presented by the Raynes application is not whether the CRT, the LED, and the LCD are known display systems, but whether Raynes' combination including video display at the fuel pump would have been obvious to a person of ordinary skill. Raynes does not dispute that the CRT, LCD, and LED are conventional forms of electronic display, but argues that the Kirk–Othmer Encyclopedia[1] if anything teaches away from his invention, in that it states that the LED and LCD are flat-panel visual displays, which were not then used in video applications.

Raynes argues that Savary does not suggest the use of video programming at the fuel pump, and that the Kirk–Othmer Encyclopedia shows that even if the LCD, LED, and CRT were known display systems, they were not interchangeable for display of video programming. Thus Raynes argues that it is not controlling whether the CRT means described in his specification and the LED/LCD means of Savary were known and conventional display means, because the function of providing video display at the fuel pump was new and unobvious. Raynes argues that Savary contemplated no more than the display of fuel quantity and price information using a system conventional for that purpose. Raynes points out that the Savary display system uses binary coded decimal signals and seven-segment numerical display, requir-

---

**1.** The Commissioner, on this appeal, does not mention this reference or discuss its substance, although the Commissioner does argue that the CRT is a conventional display system. Raynes did not object to the Board's citation of the Kirk–Othmer Encyclopedia, or request further examination in view thereof. Thus we deem the reference to be properly before us.

ing different circuitry than does a video system.

In *In re Taylor,* 288 F.2d 950, 954, 129 USPQ 269, 272 (CCPA 1961), the court referred to broad concepts "in the realm of the obvious", a designation that is apt in this case, for the use of video to display programming and other information is so ubiquitous as to warrant judicial notice. *Cf. In re Howard,* 394 F.2d 869, 870, 157 USPQ 615, 616 (CCPA 1968) (taking judicial notice of retail price marking procedures). Raynes' display at the fuel pump performs the known functions of video display of price/quantity data, in combination with the known functions of video programming. The Board correctly held that the combination of video display with the display of other information at the fuel pump would have been obvious to a person of ordinary skill.

### Claim 11

11. An interactive automobile servicing system, comprising:

a central processing unit;

a plurality of fuel pumps connected to the central processing unit and including means for displaying video programming and price/quantity information regarding the amount of fuel dispensed;

means for providing the video programming to the pumps;

means for providing maintenance information regarding an automobile being fueled at one of the pumps;

means for receiving a credit card from a motorist, reading identification information from the same, and communicating the information to the central processing unit; and

means associated with each pump for printing a report indicative of the quantity and price of the fuel dispensed from the pump and the maintenance information.

Claim 11 was held unpatentable as obvious in view of Savary in combination with Walsh. Raynes' argument is focused on the "means for providing maintenance information" clause, for the functions of credit card processing and printing a report of the transac-

tions are generally described in Savary or Walsh.

Raynes' claimed function of "providing maintenance information regarding an automobile being fueled" is described in his specification as "computer generated maintenance information" which is "maintained by the central processing unit and/or downloaded from an on-board computer". The Walsh reference shows the provision of maintenance information regarding an automobile using an on-board computer. Although Raynes argues that the Savary and Walsh references are not properly combinable because the systems of Savary and Walsh are not electronically compatible, the burden was on Raynes to rebut the *prima facie* case of obviousness made by the combination of the teaching of Walsh with that of Savary. *See In re Piasecki, supra.* The function of providing maintenance information is broadly stated in Raynes' claims and specification, as is the means for doing so. The argument of electronic incompatibility is undeveloped, and does not render unobvious the claimed combination of functions.

The Board's decision is

**AFFIRMED.**

LOURIE, Circuit Judge, dissenting.

I respectfully dissent from the panel's holding that the subject matter of claims 1 and 11 is unpatentable on the ground of obviousness under 35 U.S.C. § 103. I believe the Board erred in determining that it would have been obvious to one skilled in the art to replace the alphanumeric display system of Savary with a video display system to produce the claimed invention.

In concluding that the claimed invention would have been obvious, the Board relied upon (1) language in the specification of the Savary patent stating that the delivery pump's display can be "any conventional system" and (2) a discussion of flat-panel visual displays found in a reference relating to chemical technology. However, these references do not provide the requisite teaching or motivation to suggest the claimed invention to one of ordinary skill in the art.

The fuel delivery system of the Savary patent uses a display panel showing the volume and price of the fuel dispensed. Nowhere in the Savary patent is there even a remote suggestion to use a CRT to show that information. In fact, the specification reveals that the display described by Savary is of the seven-segment type, which is only capable of displaying alphanumeric characters. When considered in the context of the disclosure of Savary, the reference to "any conventional system" is necessarily limited to alternative types of alphanumeric displays, and does not include video image displays.

The Board's critical determination that "CRT displays are known in the art as being equivalent to LED or LCD displays," upon which its holding was based, was clearly erroneous. The Board, relying upon the discussion in the Kirk–Othmer reference that flat-panel displays "may eventually displace the bulky and fragile cathode ray tube," concluded that "choice of display is simply a matter of obvious design tradeoff involving the factors of expense, size, or bulkyness [sic], fragility, viewing conditions and power supply availability." That, however, ignores the substance of Savary which makes CRT displays not equivalent to LED or ·LCD-based alphanumeric displays in the context of that disclosure. Moreover, it ignores the added benefits of the Raynes invention. A primary object of the claimed invention is the provision of nonconventional information to the motorist at the fuel pump. Such information may include advertisements and personalized greetings in the form of graphic video images. The use of a CRT or video display in the Raynes invention provides benefits not possible with Savary. The Savary invention is incapable of producing video images. Thus, we should conclude that the claimed system is sufficiently different from the references to call it un-Savary.

Because the use of a video display in the Savary system is not suggested or taught by the prior art, I would reverse the Board's obviousness decision.