DYK, Circuit Judge,
concurring.
I agree with the majority that deference is owed to the jury’s implied findings in support of its nonobviousness verdict for the reasons ably set forth in the majority opinion. However, I write separately because, in my view, the majority errs in its construction of the “healing” limitations of these claims. Because the jury was not properly instructed on claim construction, it is impossible to determine what findings the jury made. At the same time, because the accused infringer did not seek a construction of the “healing” limitations, we should assume the jury used the correct construction. Under this construction, there was not substantial evidence that the claim limitations were absent from the pri- or art (though not in a single reference) or that secondary considerations supported a finding of non-obviousness, but there was substantial evidence for the jury to have found insufficient motivation to combine. On this ground, I agree with the majority that the accused infringer has not established invalidity for obviousness as a matter of law.
I Claim Construction
As the majority describes, the asserted claims cover an apparatus and method for treating wounds by applying suction, or “negative pressure,” and Bagautdinov, Chariker-Jeter, and Zamierowski are three groups of prior art that disclose similar suction treatment systems. The jury found that none of the asserted claims would have been obvious over this prior art, but the district court granted judgment as a matter of law (“JMOL”) that all of the asserted claims were invalid for obviousness.
“It is elementary in patent law that, in determining whether a patent is valid ... the first step is to determine the meaning and scope of each claim in suit.” Nat’l Steel Car, Ltd. v. Canadian Pac. Ry., Ltd., 357 F.3d 1319, 1334 (Fed.Cir.2004) (quoting Amazon.com, Inc. v. Barnesandnoble.com, Inc., 239 F.3d 1343, 1351 (Fed.Cir.2001)); see also TI Grp. Auto. Sys. (N. Am.), Inc. v. VDO N. Am., L.L.C., 375 F.3d 1126, 1139 (Fed.Cir.2004) (“Our validity analysis is a two-step procedure: ‘The first step involves the proper interpretation of the claims.’ ”) (quoting Beachcombers, Int’l, Inc. v. WildeWood Creative Prods., Inc., 31 F.3d 1154, 1160 (Fed.Cir1994)). The meaning of a claim is a pure *1372 ly legal issue, which we determine de novo. See Cybor Corp. v. FAS Techs., Inc., 138 F.3d 1448, 1451 (Fed.Cir.1998). The majority disregards this well established procedure by failing to directly address the proper construction of the central claim limitations related to “healing.”
The majority excuses its failure to do so on the ground that these claim construction issues “were neither raised nor discussed before the district court, and were not argued in this appeal.” Maj. Op. at 1346 n. 1. I agree with the majority that the parties have failed to address the claim construction issues directly, and have chosen instead to address the issues without the benefit of a proper claim construction. Nonetheless, defendant-appellee Smith & Nephew does contest the extent to which “healing” is required by the claims, arguing that “Wake Forest attempted to redefine its claimed invention throughout this litigation and continues to do so on appeal” by “mischaracterize[ing] the claims as requiring ‘active’ treatment of ‘clean’ wounds for ‘extended’ periods of time in order to heal the wounds,” even though “none of those limitations is in the claims.” Def.Appellee’s Br. 41.[1] And despite the parties’ failure to seek a proper construction of the “healing” limitations, it is simply not possible to meaningfully address the question of obviousness without construing these limitations either by making implicit assumptions about claim scope (as the majority does) or by explicitly construing the claims (as I propose).
The asserted claims are claims 2 and 5 of U.S. Patent No. 5,645,081 (“the '081 patent”) and claims 42, 109, 116, and 121 of U.S. Patent No. 7,216,651 (“the '651 patent”). The '081 claims both require the apparatus to create negative pressure “for facilitating the healing of wounds”[2] and to have a “sealing means ... for maintaining said negative pressure.” '081 Patent col. 9 11. 52-58 (emphases added). The asserted '651 method claims all require “maintaining” negative pressure until the wound has “progressed toward a selected stage of healing.” '651 Patent col. 23 l. 50, col. 25 ll. 47-48 (emphases added). The district court was not asked to construe “maintaining,” “healing,” or “a selected stage of healing” (collectively, “the ‘healing’ limitations”), but it did rule that the claims do not have a minimum-time limitation, a construction not challenged on appeal. J.A. 13390. We are unable to determine whether the asserted claims are obvious as a matter of law without understanding the meaning of these “healing” limitations. Because these claim terms are central to these appeal, our obligation to construe these limitations cannot be avoided simply because the district court failed to do so.
In my view, the “healing” limitations are properly construed as requiring only some progress toward healing — for example, the formation of some new tissue or skin — and not complete healing or wound closure. The language of the “selected stage of healing” limitation itself clearly indicates that only some progress toward healing is required. Additionally, claim 20 of the '651 patent (upon which claims 109, 116, and 121 depend) refers to “maintaining *1373 reduced pressure to promote the formation of granulation tissue,” and claim 121 specifies that “the selected stage of healing comprises re-epithelialization of at least a portion of the wound.” '651 Patent col. 23 11. 48-49, col. 30 11. 30-31. The district court construed “granulation tissue” as “tissue formed during wound healing” and “re-epithelialization” as “re-growth of skin.” J.A. 10373, 10377 (emphases omitted). Neither party objected to these constructions on appeal. These additional limitations in claims 20 and 121 demonstrate that “a selected stage of healing” cannot refer to complete healing. Furthermore, the unasserted dependent claims 118-120 and 122-124 of the '651 patent provide other more restrictive examples of “selected stage[s] of healing”: “substantial closure of the wound,” “substantially filling the wound with granulation tissue,” “migration of epithelial and subcutaneous tissue toward the wound,” and “a reduction in the volume [diameter or depth] of the wound by a predetermined amount.” Under the “presumption that an independent claim should not be construed as requiring a limitation added by a dependent claim,” Curtiss-Wright Flow Control Corp. v. Velan, Inc., 438 F.3d 1374, 1380 (Fed.Cir.2006), “a selected stage of healing” is presumed to not include these limitations.
There is also no indication in the specifications that “healing” or “selected stage of healing” refers to any particular stage of healing; the '651 patent simply notes that “[a]n initial stage of wound healing is characterized by the formation of granulation tissue” and that “[a] selected state of improved condition may include” a number of conditions, including any “stages of improvement or healing appropriate to a given type of wound or wound complex.” '651 Patent col. 1 ll. 40-41, col. 12 U. 59-66. The '081 patent does not define “facilitating ... healing” (as used in the claim preambles), but it notes that the invention may be used to “promote the migration of ... tissue,” “reduce bacterial density in a wound,” or “prevent!] the infection [in a burn wound] from becoming [too] severe,” “facilitating ... healing.” '081 Patent col. 1 ll. 57-58, col. 2 ll. 1-2, col. 3 1. 67-col. 4 l. 1.[3]
Although the majority opinion does not explicitly construe the “healing” limitations, it seems to make three assumptions as to the meaning of these limitations. First, the majority suggests that the claims require application of negative pressure for a particular extended length of time. For example, the majority explains that Bagautdinov did not sustain pressure “for a long enough period of time” and taught away from applying negative pressure “for extended periods”; and that Chariker-Jeter taught “away from continued long-term use of the device, as directed by the '081 and '651 patents.” Maj. Op. at 1362, 1365. But as discussed above, the district court correctly determined that the claims do not have a minimum time limitation, and that construction is not challenged on appeal.
Second, to some extent, the majority suggests that the claims require more than some progress toward healing, such as complete healing or closure. For example, *1374 the majority states that “the invention applies ‘negative pressure ... for a time sufficient to facilitate closure of the wound,’ ” that Bagautdinov was different from the claimed invention because it was not used “to treat wounds until closure,” and that the asserted claims “require wounds to be healed by negative pressure.” Maj. Op. at 1346-47,1363 (emphases added). To the extent the majority reads a requirement of complete closure into the claims, this seems to me to be incorrect — as discussed above, the “healing” limitations merely require some progress toward healing, such as the formation of granulation tissue or regrowth of skin.
Third, the majority seems to suggest that the prior art was different from the claimed invention because the purpose of the prior art was drainage and cleaning, rather than healing. The majority explains that Bagautdinov was “for draining fluid” and was “discontinued when the purulent wound has been cleaned”; that Zamierowski is “used to either drain from or inject fluid into the wound” and was not used “for wound therapy”; and that Chariker-Jeter was a “drainage system” that was “discontinued when the fistula closed or substantial drainage from the fistula stopped.” Maj. Op. 1362, 1364, 1365. However, the claims do not contain a purpose requirement — it is enough that healing is disclosed by the prior art, even if this was not the intention of the prior art inventors. As the Supreme Court explained, “[i]n determining whether the subject matter of a patent claim is obvious, neither the particular motivation nor the avowed purpose of the patentee controls. What matters is the objective reach of the claim. If the claim extends to what is obvious, it is invalid under § 103.” KSR Int’l Co. v. Teleflex Inc., 550 U.S. 398, 419, 127 S.Ct. 1727, 167 L.Ed.2d 705 (2007); see also Nat’l Steel Car, Ltd. v. Canadian Pac. Ry., Ltd., 357 F.3d 1319, 1339 (Fed.Cir.2004) (“A finding that two inventions were designed to resolve different problems ... is insufficient to demonstrate that one invention teaches away from another.”); In re Beattie, 974 F.2d 1309, 1312 (Fed.Cir.1992) (“[T]he law does not require that the references be combined for the reasons contemplated by the inventor.”). It is irrelevant that the prior art had the purpose of drainage as long as it used negative pressure to heal wounds within the meaning of the claims.
As discussed below, the majority’s erroneous claim construction leads it to incorrectly conclude that the claim limitations are not found in the prior art and that secondary considerations supported a finding of non-obviousness.
II Limitations Present in the Prior Art
Under the correct claim construction, contrary to the majority, the claim limitations are disclosed in the prior art. Because the jury received no instruction on the meaning of the “healing” limitations, it is impossible to determine whether the jury’s findings in support of its nonobviousness verdict were based on the correct construction.[4] However, the party challenging validity, Smith & Nephew, did not seek a jury instruction on the “healing” limitations. “[Ljitigants waive their right to present new claim construction disputes if they are raised for the first time after trial.” Cordis Corp. v. Boston Scientific Corp., 561 F.3d 1319, 1331 (Fed.Cir.2009) *1375 (quoting Conoco, Inc. v. Energy & Envtl. Int’l, L.C., 460 F.3d 1349, 1359 (Fed.Cir.2006)). We therefore should assume that the jury used the correct claim construction.
Under the proper construction, the Bagautdinov, Chariker-Jeter, and Zamierowski groups of prior art all meet the limitations of “maintaining” negative pressure “for ... healing” or until a “selected stage of healing” because they explicitly disclose the re-growth of tissue and skin (i.e., the formation of granulation tissue and re-epithelialization). The Bagautdinov method “accelerates ... sealing of purulent wounds,” and “the appearance of granulated tissue” was seen around the fourth or fifth day of vacuum treatment. J.A. 10003, 10027. One of the Chariker-Jeter publications states that “an increased rate of granulation and re-epithelialization is seen with the closed suction wound drainage system.” J.A. 10051. And Zamierowski states that it “promotes healing” and that “the present invention is particularly well adapted for the ... regeneration of skin graft donor sites.” J.A. 10063, 10067.[5] Because each of these references applied negative pressure for “healing” within the meaning of the claims, it is irrelevant whether these references teach away from more prolonged application of negative pressure. There is no substantial evidence to the contrary. The majority errs in concluding that these claim limitations were not present in the prior art.
III Secondary Considerations
The majority also errs, in my view, in finding that the jury could properly rely on secondary considerations to find the claims non-obvious. The failure to construe the “healing” limitations affects not only the prima facie case of obviousness, but also the analysis of secondary considerations, as we cannot determine whether the jury’s findings of secondary considerations were based on a proper understanding of claim scope. “Evidence of secondary considerations must be reasonably commensurate with the scope of the claims.” In re Huai-Hung Kao, 639 F.3d 1057, 1068 (Fed.Cir.2011). Secondary considerations related to a patentee’s commercial product is not probative of nonobviousness if the asserted claims are far broader than that commercial embodiment. Here, as the majority notes, there was substantial evidence that the patentee’s product (1) was a commercial success; (2) was responsive to a long-felt need; (3) was copied by others; (4) had unexpected results; (5) was accepted by others; and (6) faced initial skepticism. Maj. Op. at 1367. These secondary considerations, however, were related to the use of the commercial device utilizing the patent for extended periods to close and completely heal wounds.[6] This evidence would clearly be relevant if the patent claims were limited to complete healing or wound closure, but as discussed above, the *1376 claims require only some progress toward healing. There was no substantial evidence that there were secondary considerations relevant to the invention as set forth in the claims as opposed to the far narrower commercial embodiment.
IV Motivation to Combine
As the majority describes, there is, however, substantial evidence that Bagautdinov and Chariker-Jeter treat pus pockets and fistulae, respectively, rather than “wounds,” and that Bagautdinov, Zamierowski, and the Chariker-Jeter public use do not disclose an adequate seal. Thus, at the very least, to find obviousness, a person of ordinary skill would have needed a motivation to combine the treatment of “wounds” by Zamierowski with the seal from the Chariker-Jeter publications. While motivation to combine may be addressed on summary judgment or JMOL in appropriate circumstances, see Wyers v. Master Lock Co., 616 F.3d 1231, 1240 (Fed.Cir.2010), it is still a question of fact, and the accused infringers have failed to show that there was not substantial evidence to support a finding of insufficient motivation to combine. In other words, under the assumption that the jury used the correct construction of the “healing” limitations, there is substantial evidence for the jury to have at least found the asserted claims non-obvious due to insufficient motivation to combine. Thus, I agree with the majority’s ultimate conclusion that the district court erred in granting JMOL of obviousness.

. Smith & Nephew also raises the argument that “there is a lack of substantial evidence to support the jury’s finding of nexus between the '081 claims and the secondary considerations.” Id. at 66.

. The accused infringer appears to agree that this preamble language is a claim limitation. See Def.-Appellee’s Br. 62 ("The '081 claims merely require an apparatus that facilitates the healing of wounds.”).

. While the patent does mention that the invention includes application of negative pressure "for a time sufficient to facilitate closure of the wound,” id. col. 2 11. 48-49, it nowhere suggests that "healing” is synonymous with "closure,” or that "facilitat[ing] closure” requires the application of negative pressure until closure. As noted the patentee did not challenge the court's construction that there is no time limit in the claims.

. The jury did answer some specific questions in addition to giving a general verdict of non-obviousness, see J.A. 65-70, but none of those specific questions is relevant to this issue.

. The majority’s suggestion that Zamierowski “failed to disclose maintaining negative pressure until the wound has progressed to a selected stage of healing,” Maj. Op. at 1363, is thus incorrect; the majority cites testimony that merely states that Zamierowski does not discuss granulation tissue formation. See J.A. 22457:15-19 (Q. "It follows, from the fact that he doesn't mention granulation, that he’s not stating that he promotes granulation tissue growth?” A. "Well ... he doesn't state: My device promotes granulation tissue.”); J.A. 22669:5-8 (”[H]e really does not talk about the healing, maintaining the pressure until the wound has progressed to the selected stage of healing. He doesn’t talk about granulation tissue formation, promotion of that.”).

. For example, Dr. Argenta, an inventor on the patents, testified that he was surprised when a patient with a serious wound *1376 "heal[ed] completely " after several months of treatment. J.A. 20446:22 (emphasis added). Another expert testified that when a patient with an ulcer that would not heal was healed after eight weeks of treatment, he was "stunned” "[b]ecause we had used the best techniques we knew to date to close this wound and none had worked and this technique, which was counterintuitive, worked.” J.A. 22828:23-22829:2 (emphasis added).