NOVAMEDIX DISTRIBUTION
LIMITED, Plaintiff,

v.

Q. Todd DICKINSON, Acting Assistant Secretary and Commissioner of Patents and Trademarks, U.S. Patent and Trademark Office, Defendant.

No. 99CV1809.

United States District Court,
District of Columbia.

Sept. 11, 2001.

David J. Cynamon, Shaw Pittman, Washington, DC, Roy C. Hopgood, Stephen B. Judlowe, James M. Bollinger, Michael F. Hurley, Hopgood, Calimafde, Kalil & Judlowe, LLP, New York, NY, Counsel for Plaintiff.

Meredith Manning, Assistant U.S. Attorney, Washington, DC, Counsel for Defendant.

### MEMORANDUM

ROBERTSON, District Judge.

Plaintiff Novamedix is the assignee of U.S. Patent No. 4,721,101 (the '101 patent), which describes an appliance for promoting venous pump action in the foot of a patient. In 1992 Novamedix brought suit in Texas against KCI New Technologies, Inc., asserting infringement of the '101 patent. KCI denied infringement and asked the Patent and Trademark Office to reexamine the '101 patent in light of prior art that had not been considered. After reexamination, PTO's Board of Patent Appeals and Interferences decided that claims 7–14 of the '101 patent were unpatentably obvious. Novamedix challenges that decision in this suit, and the parties have filed cross motions for summary judgment. I find that claims 7–14 of the '101 patent are not obvious to one of ordinary skill in the art. Summary judgment will accordingly be granted in favor of Novamedix.

### *Legal Standards*

An invention is nonobvious unless "the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which the subject matter pertains." 35 U.S.C. § 103(a). The Board's ultimate determination of obviousness is reviewed de novo, although its underlying factual findings as to scope and content of the prior art, level of ordinary skill in the art, differences between the claimed invention and the prior art, and secondary considerations of nonobviousness must be upheld if supported by substantial evidence.[1] *Dickinson v. Zurko*, 527 U.S. 150, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999); *Graham v. John Deere Co.*, 383 U.S. 1, 14, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966). In a court challenge to a PTO rejection of claims under 35 U.S.C. § 103, the initial burden of presenting a prima facie case of obviousness is upon the examiner. *In re Oetiker*, 977 F.2d 1443, 1445 (Fed.Cir.1992). If the examiner fails to establish a prima facie case, the rejection is improper and will be overturned. *In re Rijckaert*, 9 F.3d 1531, 1532 (Fed.Cir. 1993).

Claim 7 discloses:

A medical appliance comprising an inflatable bag shaped for active engagement solely with the human foot and substantially only in the region between the ball and heel of the foot, and cyclically operable automatic means for de-

---

1. The substantial evidence test applies, however, only to the extent the Board's factual findings are consistent with the Court's construction of the disputed claim. Inconsistent factual findings—and new evidence—are evaluated de novo. *See Winner Int'l Royalty Corp. v. Wang*, 202 F.3d 1340, 1345–46 (Fed.Cir. 2000).

livering pressure within said bag in accordance with the following criteria:

> (a) a pressure rise to a predetermined maximum of 220 mm Hg or less within less than two seconds;
>
> (b) holding said maximum for a period of up to five seconds before dropping the pressure;
>
> (c) repeating pressure delivery pursuant to criteria (a) and (b) at a periodic interval which is in the range of 20 to 60 seconds.

The Board concluded that Dreiser and Rastgeldi establish the level of ordinary skill in the art[2] and that claims 7–14 of the '101 patent are obvious over Dreiser in view of Rastgeldi and Gaskell/Parrott. The Board found that it "would have been obvious to modify the inflation means taught by ... Dreiser with the inflation criteria and holding period taught by Rastgeldi." Ex parte Novamedix, No. 97–2776 (PTO Bd. Patent App. & Interference Dec. 4, 1998) (Def.'s Ex. 1) at 2413. That finding assumed that the novelty of the '101 patent was only the "inventors' departure from normal ambulatory conditions involv[ing] the application of forces to the foot for a holding period of time which is not present in normal ambulation." (Def.'s Ex. 1 at 2400). It did not contemplate the different, and more narrow, construction that this Court has given to the term "active engagement" in the phrase, "A medical appliance comprising an inflatable bag shaped for active engagement solely with the foot and substantially only in the region between the ball and heel of the

foot." That term is now construed to "preclude[] additional inflatable bags activated in time-coincidence with the bag(s) directed to the plantar arch." Cl. Constr. Mem. at 5 (Jan. 12, 2001). The novelty of the patent thus involves, not only variable holding periods longer than those present in normal ambulation, but also the absence of any other pump involvements. "[T]he fact of no other pump involvements means that foot-pump driven venous-return flow can be substantially unimpeded in its direct delivery."[3] '101 Patent, at Col. 5, 11.40–43.

██ The difference in claim construction undercuts the premise of the Board's obviousness finding. The PTO nevertheless argues that claims 7–14 of the '101 patent are obvious over Dreiser in light of Rastgeldi and Gaskell/Parrott, and also in light of the inventors' own British patent application.

Dreiser taught a pressure therapy boot "characterized by the fact that it has an inflatable pocket located at the level of the plantar arch." (Def. Exh. 5 at 3823.) The Board concluded that Dreiser taught "a medical appliance meeting all of the limitations" of claims 7–14 except those relating to specific operating criteria. (Def.'s Ex. 1 at 2412.) That conclusion rejected Novamedix's argument, that Dreiser was different because it taught multiple concurrently pressurized pockets, because, contrary to the Court's own claim construction, the Board did not regard claims 7–14 as limited to pressure to the plantar arch without

---

**2.** Novamedix accepts this finding for the purposes of these cross-motions. (Plf.'s Mem. at 15.)

**3.** There continues to be some dispute over the meaning of this court's claim construction. (*Compare* Def.'s Opp. at 19, *with* Plf.'s Reply at 5.) Claims 7–14 of the '101 patent are properly read to exclude the inflation of additional bags at the same time as the bag(s)

directed to the plantar arch, as well as the pressurization of any bag(s) concurrently with the pressurization of bag(s) directed to the plantar arch. This court also understands claims 7–10 to exclude the possibility of a holding period of zero. A contrary reading is not consistent with either the Board's review of the claims or the prosecution history.

active engagement of the other pockets. (Def.'s Ex. 1 at 2414.)

Rastgeldi disclosed a method for treating circulatory conditions by cyclically applying pressure to a patient's leg. The Board concluded that Rastgeldi suggested, if it did not actually teach, the operational criteria of claims 7–14. But Rastgeldi, like Dreiser, did not teach or suggest application of pressure to the plantar arch not in time-coincidence. If anything, Rastgeldi taught toward time-coincidence, as it describes constant pressure through the thigh cuff and then subsequent, cyclical inflation of the other cuffs.

The Gaskell/Parrott reference taught an inflatable boot operating with a holding period. The Board declined to base its obviousness holding on Gaskell/Parrott (concluding that "Gaskell/Parrott would not have suggested modifying the Dreiser device in any way meaningful to the rejection at hand" PTO at 2412), but PTO counsel now argue that Gaskell/Parrott renders the '101 patent obvious because it "teaches inflation of the cuff and boot that is not time coincident." The argument is mistaken. Like Rastgeldi, Gaskell/Parrott teaches constant pressure around the ankle and then the addition of pressure to the arch of the foot. While the cuff and boot are inflated beginning at different times, the key is that the inflation of the boot is time coincident with an inflated cuff—they apply pressure concurrently—thereby teaching away from the '101 patent.

The PTO also argues that the *combinability* of the elements in Dreiser, Rastgeldi, and Gaskell/Parrott is obvious, urging that Rastgeldi's "teaching that the operational criteria disclosed therein aid in the treatment of circulatory problems would have provided the artisan with ample suggestion or motivation to combine" (Def.'s Ex. 1 at 2415), and relying upon the opinion of Dr. Hasty that the benefits of gradi-

ent pressure are well known and that the Rastgeldi device could be easily modified to conform to the operational specifics of claims 7–14.

■ "The notion … that combination claims can be declared invalid merely upon finding similar elements in separate prior patents would necessarily destroy virtually all patents and cannot be the law under the statute, § 103." *Panduit Corp. v. Dennison Mfg. Co.*, 810 F.2d 1561, 1575 (Fed.Cir.1987). Someone experimenting with all possible combinations of gradient, cyclical pressure might have come up with a device like that disclosed in claims 7–14 of the '101 patent, but that possibility does not establish combinability. In order for its argument to succeed, the PTO must show *why* the benefits of gradient pressure and a holding period, which may indeed have been obvious, would have suggested the benefits of active engagement, with a holding period, solely with the plantar arch. It has not made such a showing, and nothing of the sort is apparent from the prior art. *See Ruiz v. A.B. Chance, Co.*, 234 F.3d 654, 665 (Fed.Cir.2000) ("While the references need not expressly teach that the disclosure contained therein should be combined with another, … the showing of combinability must be 'clear and particular.' "); *In re Rouffet,* 149 F.3d 1350, 1359 (Fed.Cir.1998) ("Board must identify specifically the principle, known to one of ordinary skill, that suggests the claimed combination."). *See In re Fritch,* 972 F.2d 1260, 1266 (Fed.Cir.1992) ("The mere fact that the prior art may be modified in the manner suggested by the Examiner does not make the modification obvious unless the prior art suggested the desirability of the modification.").

The PTO's final argument invokes British Patent Application No. 2,141,938–A (the '938–A reference), which was filed by the inventors of the '101 patent. It dis-

closed a device almost identical to that disclosed by the '101 patent, but without the operational criteria suggesting a holding period. The Board had held that the '938–A reference taught away from the holding pattern specified in claims 7–14 of the '101 patent because it was directed toward simulating normal walking, for which there is no holding period. PTO at 2409. Now, however, the PTO argues that, when combined with Rastgeldi, which discloses the benefits of a holding period, the '938–A reference renders claims 7–14 obvious.

■ The '938–A reference simulates normal walking, which involves pressure to the arch of the foot, but it does not teach or suggest additional benefits from a holding period, nor does it implicitly suggest a modification of the device that would use the hold patterns suggested by Rastgeldi. "It is insufficient … that the separate elements of the invention existed in the prior art, absent some teaching or suggestion, in the prior art, to combine the elements." *Arkie Lures, Inc. v. Gene Larew Tackle, Inc.*, 119 F.3d 953, 957 (Fed.Cir. 1997).

The PTO's attempt to undermine the Board's conclusion that the '938–A reference teaches away from the '101 patent is not successful. It is true that Novamedix's expert, Dr. Myerson, stated in a deposition that the '101 patent simulates walking, but he then retracted that statement at the *Markman* hearing, explaining that his deposition testimony on that point was a mistake brought on by exhaustion from recent travel. I am satisfied that Dr. Myerson's real opinion is that the '101 patent does not simulate walking and that his opinion is well supported. On the other hand, Dr. Hasty's testimony that the holding period of the '101 patent is designed to simulate walking hand was not convincing. When asked who walks with a five second hold per step, Dr. Hasty answered, "I don't know. You mean a hypothetical person? A 90–year old individual in a nursing home using a walker." (Def.'s Exh. 18 at 110, 11.8–10.)

My conclusion that the PTO has not established a prima facie case of obviousness makes it unnecessary to consider whether Novamedix has adduced enough objective evidence of nonobviousness to rebut a prima facie case. *See In re Beattie*, 974 F.2d 1309, 1313 (Fed.Cir.1992) ("It is unquestioned that such evidence must be considered and may be sufficient to overcome a prima facie case of obviousness."). It should be noted, however, that the record in its present state of development is insufficient to support any finding on that point. The Board's conclusion—that the objective evidence of nonobviousness was not probative—was premised on a faulty claim construction. (*See* Def.'s Ex. 1 at 2415.)

In an argument not raised before the Board, the PTO asserts that Novamedix should have brought a methods claim, instead of an apparatus claim. The argument is that the only elements of the '101 patent not expressly claimed in an earlier Novamedix patent, U.S. Patent No. Re. 32,939, are the functional parameters, *i.e.*, the holding periods. The argument is rejected, because the '939 patent does not teach or disclose an automatic means for controlling the holding period. Thus, while the apparatus disclosed by the '939 patent could be combined with an automatic means for controlling the holding period, the combinability is no more obvious than with the Dreiser reference.